IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICK DONALDSON,

    Petitioner,

v.

TIM BUCHANAN, WARDEN,

    Respondent.

CASE NO. 2:12-CV-464
JUDGE FROST
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 3, Respondent's *Motion to Dismiss*, Doc. No. 8, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* this action as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d) be **GRANTED** and that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On July 17, 2008, a Franklin County Grand Jury indicted appellant on one count of burglary in violation of R.C. 2911.12, a felony of the second degree. Subsequently, on February 10, 2009, appellant's jury trial commenced. The state presented five witnesses, whose testimony established the following undisputed facts. On July 8, 2008, Shelley Hays ("Hays") was sitting on her porch reading a book when she noticed that her neighbor's downstairs window was open and the drapes were billowing through. Approximately an hour later, Hays observed an individual stop in front of the open window, poke his head in, look around, and jump through the window into her

1

neighbor's residence. Hays called 911 and described the individual as wearing "long denim shorts * * * [and] a white kind of athletic shirt with short sleeves, with some orange trim[.]" (Tr. 201.) At trial, Hays testified that she had seen this individual before in the neighborhood and knew that his first name was Shawn. She explained her impression was that he was either "living or stayed regularly with the woman who had rented the other side of [her neighbor's] duplex." (Tr. 202.) Hays identified appellant as the individual she saw enter her neighbor's residence through the window, and she had "no doubt" about the accuracy of her identification. (Tr. 203.)

Officer Richard Hilsheim, a 19-year veteran with the Columbus Division of Police, was on patrol in the area when he received a dispatch indicating that a burglary was in progress. The dispatcher stated that the suspect was a "male black in an orange and white shirt with long, baggy blue jeans shorts." (Tr. 262.) When Officer Hilsheim arrived at the location, he observed an individual that matched the description standing in front of a silver Pontiac ("the vehicle") that was parked in front of the residence. Upon seeing the cruiser, the individual, later identified as appellant, began to walk away from the vehicle. Officer Hilsheim detained appellant and called for backup. Officer Hilsheim testified that at the time of appellant's detention, appellant was holding a set of car keys and, on the key ring, was the tag number of the vehicle, which turned out to be a rental car.

When the backup unit arrived, Officer Hilsheim, along with Officer Richard D. Little, approached the residential address given by dispatch and, upon inspection, observed an open downstairs window and found the front door to be unlocked. The officers entered the residence to investigate and secure the scene. Officer Hilsheim went upstairs and, in plain view, he observed a checkbook, which appeared to belong to Shawn Sutton ("Sutton"). Using the information found in the checkbook, Officer Hilsheim contacted Sutton, who verified that he was the owner of the residence (a duplex structure). Sutton arrived at the scene within minutes of being contacted.

The officers next notified a burglary detective, and while standing outside waiting for that detective to arrive, Officer Little noticed that there were power tools situated on the front seat of the vehicle. He then pointed the tools out to Sutton, who identified the same as belonging to him.

Inspector James P. Francis, a ten-year veteran of the Columbus

> Division of Police and on assignment to the burglary squad of the Property Crimes Bureau, arrived at the scene. After speaking with the officers, Inspector Francis verified that the keys found on appellant belonged to the vehicle by starting the vehicle. He also confirmed that appellant's fingerprints were found on a CD located inside the vehicle. At trial, Inspector Francis explained that the basis for starting the vehicle and testing the CD for fingerprints was to link appellant. He explained the foregoing was necessary because the rental car agreement recovered from the vehicle was not in appellant's name.
>
> At the scene, as well as at trial, Sutton positively identified that the tools found on the front seat of the vehicle were his and that, at no time, had he given appellant permission to be in possession of those tools. Sutton explained that he was in the process of rehabilitating one unit in the duplex residence, and that he had rented the other unit to Ann Williams, appellant's then girlfriend. At trial, Sutton stated that he had met, and spoken to, appellant prior to the date of the incident.
>
> At the close of the state's case, appellant moved for acquittal pursuant to Crim.R. 29(A), arguing that the state had failed to produce sufficient evidence on each element of the burglary charge. The trial court overruled the motion. Appellant did not testify or call any witnesses. The case was submitted to the jury, which found appellant guilty. The trial court sentenced appellant to a term of eight years' incarceration.

*State v. Donaldson*, No. 09AP-399, 2009 WL 5174113, at *1-2 (Ohio App. 10th Dist. Dec. 31, 2009).

On December 31, 2009, the appellate court affirmed the trial court's judgment. *Id*. Petitioner did not timely appeal. On March 31, 2010, however, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 8 to Motion to Dismiss*. On February 16, 2011, the appellate court issued a *Journal Entry* denying Petitioner's Rule 26(B) application.[1] *Exhibit 13 to Motion to Dismiss.* On May 25, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent

---

[1] The appellate court initially denied Petitioner's Rule 26(B) application on June 29, 2010; however, the appellate court vacated that decision and re-issued a *Journal Entry* denying Petitioner's Rule 26(B) application because notice had not been sent to Petitioner's counsel. *See Exhibits 10, 11, 12 to Motion to Dismiss*.

appeal. *Exhibit 17 to Motion to Dismiss*.

On May 30, 2012, Petitioner filed the *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He indicates that he executed the petition on May 23, 2012. *See Petition*, PAGEID #59. Petitioner asserts that he is in the custody of the Respondent in violation of the Constitution of the United States on the following grounds: prosecutorial misconduct (claim one), the evidence against him was insufficien (claim two), his conviction was against the manifest weight of the evidence (claim three), and he was denied the effective assistance of appellate counsel (claim four). It is the position of the Respondent that this action was untimely filed. Petitioner has not responded to the motion to dismiss.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions.

28 U.S.C. § 2244(d) provides:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable

to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, Petitioner's conviction became final on February 14, 2010, forty-five days after the appellate court's December 31, 2009, denial of his appeal, when the time for filing a timely appeal to the Ohio Supreme Court expired. *See Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 459 (6th Cir. 2012)(citing *Gonzalez v. Thaler*, – U.S. –, 132 S.Ct. 641, 653 (2012)). The statute of limitations ran for a period of forty-five days, until March 31, 2010, when Petitioner filed an application to reopen the appeal under Ohio Appellate Rule 26(B). His Rule 26(B) application tolled the running of the statute of limitations until May 25, 2011, when the Ohio Supreme Court dismissed his Rule 26(B) appeal. *See Lawrence v. Florida*, 549 U.S. 327 (2007). The statute of limitations then began to run again, and expired 320 days later, on April 9, 2012. However, Petitioner waited until May 23, 2012, to execute this habeas corpus petition. Moreover, he has failed to identify any extraordinary circumstances that would justify the equitable tolling of the statute of limitations. *See Holland v. Florida*, – U.S. – , 130 S.Ct. 2549, 2562 (2010) (statute of limitations may be equitably tolled in extraordinary circumstances).

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 8, be **GRANTED** and that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d)**.**

### PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

        *s/ Norah McCann King*
        Norah McCann King
        United States Magistrate Judge

November 27, 2012